Mr. Coburn for the appellant, Mr. Booth for the appellant. Good morning. Good morning, Your Honor. May it please the Court, Barry Coburn for the appellant, Deenvaughn Rowe. What I would propose to do is to direct the Court's attention to, or ask the Court to focus, I should say, on one particular aspect of our argument, of what we noted in our opening brief, which has to do with the several witnesses that Mr. Rowe identified for his trial counsel. And with respect to those witnesses, what happened or didn't happen in terms of Mr. Rowe's representations is essentially uncontested. There appears to be no dispute that his trial counsel talked to, I think, three of them, but then there were a series of them that he didn't talk to and never made contact with. There's no evidence that he sought to. And the problem with that from our standpoint is, I mean, what happened basically in this case was what we as a criminal defense counsel will refer to colloquially as a sort of a slow plea. And part of the reason for that was because, at least as far as I can tell from reviewing the record, the jury really never had any reason to doubt the proposition that with respect to the contact with Mr. Rowe's computer, which was really the centerpiece of the prosecution of him, that he did that. I mean, there was sort of a vague suggestion out there that, you know, the door was open and other people could have used it. That's really very unpersuasive evidence from my standpoint. Vis-a-vis what could have been developed, which was evidence that other employees, co-employees actually utilized his computer on a regular basis. Just as a factual matter, counsel, wasn't there evidence from the government's own evidence that was used by Rowe's counsel below to show that two devices were logged in at the same time, which would suggest that someone else had the ability or access to log in using Mr. Rowe's credentials? It's probably consistent with that proposition, Your Honor. You know, the fact that two computers are logged in at the same time for the same user can connote the notion that the user is simply using one computer and then another computer sequentially. But the more fundamental point from my standpoint is that evidence, even if it suggests exactly what Your Honor just indicated, if it suggests that others might have used his computer on, say, one occasion or something like that, that's not, I would suggest to the court, functionally equivalent to the proposition that there are a series of other individuals who used his computer, used his login on a regularized basis. And there is sworn testimony in the 2255 hearing to that effect from Mr. Rowe. There's no evidence to the contrary. And so there's every reason, I would suggest, to believe the proposition that had his trial counsel located, interviewed, and presented the testimony from these individuals, the jury then would have had something, I would suggest, far more substantive. Let me ask this question. Suppose the case is a shooting that happens on, you know, January 1st at noon. And the defendant tells his lawyer, well, on January the 1st at noon, I was at a picnic at some other place, and there were 10 people who were with me at that picnic and who would be able to testify that I was there. And the defense lawyer speaks to three of them and they say, I don't know what you're talking about, there was no picnic on that day. Does not speak to the other seven. Do we just presume ineffectiveness because we presume that the other seven or at least one of the other seven would have corroborated that the defendant was at the picnic with them? Or would we require some sort of showing that at least one of those seven witnesses that reported witnesses that wasn't spoken to would actually say that? My suggestion to your honor is that the metaphor is problematic for the following reasons. If you have 10 people at a picnic and you interview three of them and all three of them say that there was no picnic on that date and time, then, I mean, that's persuasive evidence right there that, you know, to that proposition that there was no picnic. And so I'm not sure that I can make a credible argument that it's necessary to talk to all 10 of them to see whether anybody's going to contradict what the three said, that there was no picnic. But here, you know, you've got a situation in which these people are engaged in activity independent of one another. So, in other words, if Mr. — if trial counsel had interviewed one witness and that witness said, no, I never used Mr. Rowe's login, that is not persuasive of the proposition that witness number two would say the same thing. So that, I think, is a fundamental difference. I take your point, but I guess — and that is — I think that's a fair distinction, but I guess my bigger issue is you have to establish prejudice. So even if I were to agree with you that it was deficient performance to not have interviewed every single one of these witnesses that Mr. Rowe identified, how do I know that there was prejudice? I focused on that very question as well, Your Honor. And I focused on several cases that are cited in our opening brief on what constitutes a showing of prejudice in the 2255 context. And here I'm referring to the Fatum Bahirtu, the U.S. case. Blakeney and Strickland actually addresses this, too. I mean, one might sort of intuitively think that it would be necessary to demonstrate, you know, let's say to a preponderance that the result would have been different, but that's not actually the standard. What you have to show is whether there is — and here I think I'm quoting from Strickland — whether there's a reasonable probability that, absent the errors of FactFinder, would have had a reasonable doubt, respect, and guilt. So what do you think is involved in showing that, right? Because what would have been very helpful is for us to have some idea of what these other witnesses would have said. But there's no attempt to go interview them now. There's not really a record from which we could do anything but speculate. I thought about that very issue, Your Honor. And I think as I stand here, I have to concede that in the context of the evidentiary hearing below, before Judge Chetkin, it would have been preferable to have an investigator go out and interview these witnesses and present testimony from the witnesses themselves and or the investigator, if that's not hearsay. But, I mean, to establish a record, you know, to a greater degree of specificity, I've got to concede that would have been preferable. But there actually is a record here, even if not a perfect record. And I think Judge Chetkin may have — we disagree with the conclusion in Judge Chetkin's memorandum opinion that there was no showing about what these witnesses would have said because what you do have is the appellant's own sworn testimony in the hearing, in the 2255 evidentiary hearing below. I have one more question then about deficiency, which was sort of the next step, I think, in my mind from what Judge Wilkins was asking. Because Brennan actually says at the hearing that I understood the setup of this office. There was a computer in the front and a computer in his office. And even if Steele and Saunders had said, yeah, every day people are going into his private office and using his computer, I wouldn't have called them because that would raise all sorts of other questions that could have been harmful to our defense. And this is his explanation. Then you have, it sounds like we're trying to prove who it was rather than creating reasonable doubt. It's on pages 346 to 49 of the JA. Anyway, why isn't that a reasonable judgment? Even if I could have had testimony, it would have opened them up to damage and cross-examination. What's wrong with that explanation? And, of course, that's exactly the rub, if you will. That's the issue you run into in virtually every 2255 case where, you know, the trial counsel whose performance is – This is not a 2255. We're still on direct appeal here. We remanded from the direct appeal. I'm sorry to interrupt. Go ahead. I may have misunderstood the question then because I thought what was being referred to here was Brennan's testimony about, you know, the notion that I wasn't going to call them because they would have been subject to adverse cross-examination, which is, of course, always a possibility. I mean, you can't eradicate that as a trial lawyer. But here, I mean, in terms of, like, the reasonableness of the tactical judgment at issue, how would eliciting testimony from a witness, you know, to that effect, as Your Honor just described it, you know, that they were, like, routinely utilizing his computer, I mean – and, of course, I mean, I could speculate that there might have been other adverse things that could have been elicited from these people on cross-examination. But, I mean, that would have been, it would seem to me, you know, an absolutely critical bit of exculpatory testimony. I mean, that would have actually given trial counsel something to argue, something substantive to argue. You know, ladies and gentlemen, you can't tell. You don't know that this was him who did this. Now, of course, I concede, you know, there's other evidence against Mr. Rowe at trial. You know, there was some surveillance testimony and so on. But that would have been at least, you know, a substantial kernel of reasonable doubt, which I think meets the prejudice standard. Can you identify any case where a court has said that we will rely on the defendant's testimony about what purported witnesses would have said to establish prejudice in the absence of any sort of even hearsay from an investigator from those witnesses? I don't think I have that case. I have a recollection of having read authority to that effect, but I don't have it at my fingertips. And like I said, I acknowledge it would have been better, you know, to have some additional investigation done following remand prior to the 2255 evidentiary hearing. That would have been better and would have given the court more to work with. But I guess my response to Your Honor would be I don't think there's any per se reason why, you know, because, I mean, the defendant isn't just speculating. I mean, he is testifying based on his own observations and interactions with these individuals, and so that would seem to be competent testimony. And, of course, I mean, I recognize he has a substantial interest, but nonetheless I don't think that disables him from providing that evidence. You mentioned a couple times how much preferable it would have been to have had some actual evidence gathered, and you were not counsel for the remand hearing, which I remind you again was not a 2255. This is just our procedure. It's still all direct appeal, no 2255. Oh, I understand. I'm sorry. I misunderstood Your Honor's point. I have it. Right. You weren't counsel there. But, in fact, when you brought this appeal, you filed a motion for summary reversal on the basis of the incompetence of the attorney who handled that remand proceeding for failure to do the very thing that you said she was going to do, and that is interview witnesses and make the very record that everyone knows needs to be made on these types of showings. And the panel that heard that summary reversal decision said, we're not ready to summary reverse. We're referring this to the merits panel. And you must brief it to the merits panel. And if you were right that she was incompetent for failure to do the very thing that needs to be done in this type of proceedings, that could have been an important claim to be presented here. But it's nowhere in your briefs, and I'm really quite baffled, given that your argument recognizes how harmful it is not to have the record made when the opportunity was given. I take Your Honor's point, and I'm thinking back a ways here in terms of what our rationale was for approaching it that way. And I'm not sure this is going to be a satisfactory explanation to Your Honor. But what we're authorized to pursue as appointed counsel here is, you know, the direct appeal of Judge Chutkan's determination below that trial counsel was ineffective, not a direct appeal. You filed a motion for summary reversal and remand for that, so that clearly was within your wheelhouse. And if that's part of what's needed to be done, if you need to show that person was ineffective so you have a record to show that the other person was ineffective, I see no colorable argument that that's not within your wheelhouse. And you thought it was because you filed the motion, and two members of this panel thought it was worth sending to this very panel for a decision on the merits. So that seems to me not – I guess I'm not understanding that explanation. If you thought you could file the motion then, you could certainly – and the panel told you you could brief the issue. I don't know what more authorization you need.  And that easily could have been a mistake on my part. But that, if I remember correctly, was our thinking, that we were not empowered to do it, at least with respect to pursuing this appeal. That's not to say that there might not be – and, of course, I don't – as I stand here right now, I don't know procedurally, you know, precisely what options Mr. Rowe would have in that regard. But I don't – I believe we concluded, and we may have been wrong, I believe we concluded that we couldn't pursue it in this context because it's not within the scope of what we were authorized to appeal. Was it competent for an attorney at the remand proceeding not to investigate any witnesses, not to make a record? Well, as Your Honor correctly notes, you know, there was a position taken earlier to the effect that it may not have been competent. And, I mean, that's just an excellent question. There I think you might be within, you know, some sort of a reservoir of tactical judgment, and that would, you know, depend on the specific conversations about what these – about what Mr. Rowe knew about what these witnesses would have said. So I suppose you could envision a scenario in which a tactical judgment could be made that I'm not going to hire an investigator, I'm better off with Mr. Rowe's testimony. I guess I'm a little confused because the heart of your argument for why trial counsel was ineffective was sort of – was we got to – you got to talk to the people and you got to ask the questions. You don't know what you don't know. No one's yet saying – you can't know whether someone was effective strategically or ineffective for failing to put a witness on without having first figured out what that witness is going to say. You don't know what you don't know. And so given that that's your argument here as to trial counsel, I'm a little confused by your argument that somehow the attorney on remand could have just decided I'm not going to bother to interview or ask anybody. I'm not going to do an investigator. Having said I was going to interview these witnesses, I did not interview these witnesses. So how can you make an uninformed strategic judgment, I guess, is my question. I don't think I have a good answer to that question, Your Honor, and I do take the court's point with respect to it. I don't think the two scenarios are necessarily precisely identical. From the perspective of Mr. Rowe's trial counsel, he's interacting with a client prior to a jury trial. The client says, I guess it's six or seven individuals have information which is substantively exculpatory. And this responds to Judge Garcia's question as well. I don't think I see a legitimate tactical argument as to why you would not hire an investigator to interview those people. With respect to the second lawyer who handled the hearing on remand, that might be different. I don't know why you're bothering to defend him. I don't understand why. The whole point of that hearing was to gather evidence. The whole purpose of it was to gather evidence and make a record, and that didn't happen. It certainly didn't happen in that regard. I agree with Your Honor's observation to that. Do you thought, or appellate counsel thought at some point here that it was worth, it was so obvious that there should have been a summary reversal agreement for yet another ineffective assistance hearing?  And, you know, as I said, Your Honor, that may have been a misjudgment on my part in terms of not including that in the merits brief, in our opening brief. You know, my best recollection in terms of our thinking at the time was that we concluded that we might not be allowed to do it in this context, and it might require, you know, a separate proceeding in which an allegation is made below about ineffectiveness of the remand counsel. But I could have been wrong. No questions? I just have one more sort of type of question, which is about the, what do you understand this argument to be that the lawyer didn't review discovery with him? What evidence is he saying the lawyer didn't review with him? Because on one view, it sounds like a lot of the primary evidence in the case, he's claiming his lawyer didn't review with him, and that would look a lot like a big problem. But it's all very vague. Well, it is vague, and there was extensive testimony below from his trial counsel about what discovery materials he showed Mr. Rowe and reviewed with him when Mr. Rowe was incarcerated and what materials he didn't. And it sounded from that testimony. Do you think the trial court credited Brennan's version of that? Absolutely. I mean, I didn't see anything in the trial court's memorandum of opinion suggesting she didn't credit it. And I'm not sure in my own mind, as I sit here, I may just be having a failure of recollection, but I'm not sure how directly inconsistent Brennan's testimony about what he reviewed with Mr. Rowe was, vis-à-vis what Mr. Rowe said was reviewed. It may have been directly inconsistent. I sort of emerged with the impression that it might not have been. And if Brennan's testimony is credited, it sounded like, you know, he made a cut in his own mind in terms of what was substantively significant in trial and what likely wouldn't be. Okay. I'm curious as to the basis for inferring a finding of credibility, because I just don't recall the district court order having addressed this discovery issue. At all? It didn't address the district court's memorandum of opinion did not make a credibility finding. Are we to just infer that? Infer it? I'm sure Your Honor is right about that. I mean, I emerged with the conclusion. I mean, I thought there were observations in Judge Chetkin's opinion about the review of discovery materials. I may have that wrong. I may not be remembering it correctly. But I thought she did. So on the face of the opinion, there is no finding about what discovery was reviewed with Mr. Rowe. There was also a very direct and important conflict between what Mr. Rowe said and what Mr. Brennan testified. But maybe this is just another area where remand counsel was incompetent, because he says, I did not know they seized two phones from my car, and that was used at trial. And I would think that a good appellate argument would be they didn't review some of the central evidence in the prosecution against my client. And if he had, he would have made some other choices. But let's not focus on that today. So maybe further questioning isn't productive. That may very well be. I wish I had a better, you know, a clearer, more specific recollection of exactly what Judge Chetkin said in her memorandum opinion about this. I could have sworn that there was a recitation in there about what discovery materials she found had been reviewed. But I may have that wrong. Any other questions? All right. Thank you very much. We hear from the government. Thank you. May it please the Court. Mr. Brennan, Roe's defense counsel gave effective representation to Roe at his trial. And even if he didn't, Roe wasn't prejudiced at all. How can it be effective not to? I'm not talking about once you gather all the information, making a strategic judgment about what your defense should be, what witnesses to put on or not put on. How can it be effective to not even talk to them? With respect to what was going on with these computers, he talked to one person who did not work in the office. Off point. He talked to one who said, yeah, there was some of this, but people didn't go back in his office very much. Now, if the other two had said, we were in his office all the time, that would have been a monumentally different calculus for a defense counsel. Not saying how we would review an ultimate decision, but it would be an informed decision. And this attorney, the attorney, the trial attorney, didn't bother to get informed about something that was pretty critical to a defense case. Critical enough that he tried to argue it with one hand tied behind his back. How can that be competence? I think in terms of evaluating competence, you have to look at the overall performance of the defense attorney in what he did to investigate the login procedures. And in this particular case, he had heard from Roe himself about what the login procedures were at at the post office. So he already had that in his mind. Now, he also then interviewed a second person who told him that other post officers told him that they did not otherwise go into Roe's office. And he also made a strategic judgment. My question was how you can make an uninformed strategic judgment. You just set it up that Mr. Roe said one thing. The one in-office witness that he interviewed said supported part of what he said about people logging in multiple times and using each other's computers. Supported them halfway, but then said, well, we didn't go back in his office that much. All right. Why? That just simply raises a question, a conflict. You don't stop there. Then you talk to the others. No one would make an important life decision without getting further information in that situation. Yes, but he had already made a determination of that. And he made an uninformed determination. It was not an uninformed. He had already interviewed a couple of witnesses with respect to this particular point. Again, we've gone through this. The first witness didn't even work in the office, so put that one aside. So now we're down to one witness who corroborated some of his story, but for the other part was much more qualified. How can you decide to stop when someone says, yep, yeah, I agree with part of what he's saying, but the other part I don't know that I agree with? Why? And you've got two more people who work in that office you could talk to to get a full story. How can you make a strategic judgment based on that scanty information? Well, again, you have to realize that he had talked to Roe, and if there was any one individual. He gave him all the individual names. He had given names, but he had also Roe himself. He wasn't going to put Roe on the stand. Well, I know he wasn't going to put Roe on the stand, but he had already made a determination of exactly what the particular problems were in that case, what he was going to have to do to try to show that other people had access. We're going to go in circles here because you say he'd already made up his mind on his strategy without bothering to talk to the witnesses. What I'm saying is that a defense lawyer does not have to speak to every potential defense lawyer. We're not saying everyone. Judge Wilkins' hypothetical was a good one where that wouldn't happen. But here where you actually have someone saying, yeah, he's actually partly right, there's something to this, but there's this issue of his own office. So then we need to pin this down. Well, that is true, Judge Millett, but I would also like to point out in addition, you're saying, well, they did not interview those two witnesses, but there were other things that he did that showed that he did a reasonable investigation in this case. Wait, other than that central defense offered by the defendant, he did some nice things over here. Is that competence? Of course it is. Well, what happens is, Judge Millett, is that the Supreme Court has said in Strickland that there is a great deal of deference that you give to choices that defense attorneys make. Informed choices. Informed choices. Is there a case that has said uninformed choices? Well, of course not. No, there's no case that says uninformed choices. I'm asking you why this is not an uninformed choice situation. Well, because he had already done an investigation. He had already made a determination in his own mind. I hear you say he had already talked to one. Again, two doesn't count for me because one didn't work in the office. So, one witness. One witness and also Roe's own testimony. And he made up his mind. And Roe's own information that he gave to him. But assuming, granted. There's a conflict between those two. So, a conflict, you just say, I disbelieve my client. This other person actually wasn't saying he's wrong, just had a perspective that people didn't go office that much. But I imagine the next person said, agreed with the first witness that we were using each other's computers. Most of us did not go back in his separate office. I mean, occasionally would, but pretty rare. But this other person, he was back in Mr. Roe's office all the time. Would that perhaps inform a different strategic judgment? If those were the facts. If you had a witness who had testified at this evidentiary hearing. Yes, we were in there all the time. And we had other postal service employees who were using his login procedures all the time. Wait, you're at this evidentiary hearing. I'm saying, you're like me. It's like, wow, that would be, hold everything. Still not saying how you would actually handle the defense, but it would be an informed judgment. It would have been. You're like, wow, yeah, that would make a difference had we talked to that witness. If he talked to that witness and if those witnesses had said exactly what the defense. Well, not if he talked. We know he didn't talk. We know he didn't talk to him. But we also know that what the attorney did in this case was a reasonable investigation because he talked to a couple witnesses. Don't know that. Well, if you don't know that, well, let me then pivot to the prejudice issue here. And that's why I wanted to begin my argument. I just wanted to pin down with you on this because you started by saying it was competent and reasonable. And yet we all agreed that uninformed strategic decision. I would agree. I'm going to finish my sentence. It's not competent representation. And there was a complicated story going on here, at least. It was unclear story at the time he made a decision. It was quite unclear and foggy what was happening in that office. And he just plowed ahead forward without that. I actually don't think it is all that unclear what was happening in the office. Again, if I could pivot to show what the government's evidence was in this case. The government's evidence is it showed in part that there were text messages between Roe and his two co-defendants. And the text messages had at least one of them. And, again, you can look back to the Board of Appeal, your court's decision in the direct appeal in this case. And so one of the text messages had tracking information. And if that's the case, then that shows that who's doing the tracking. It was Roe doing the tracking. It wasn't some other person in the postal office. Were those text messages from his own phone or a burner phone? I'm not sure it was, but that was part of the government's evidence at trial. Right, but that would matter as well. It might be. But, again, the point, and I wanted to pivot primarily when I started my argument, is that this court should start off with a no prejudice contention. Because Strickland says, one, you can do that. You don't have to go to the ineffectiveness problem if you don't want to. And, second, the reason I wanted this court to go right to that was because in Massaro, the court said that the court that did the trial and that handled the evidentiary hearing has a most advantageous perspective on the case. Now, Judge Schuchat in this case made a specific determination that the evidence was extensive and it was strong. We don't have any ruling from Judge Schuchat, as you have conceded, on this argument about failure to share discovery with the defense. It doesn't talk about it. To the extent we want to give, of course, the front row view of the trial judge gets enormous respect. So when we have nothing but silence on, as Judge Garcia mentioned, a really important issue, we've got nothing to defer to. So what are we supposed to do? And we've got a real conflict between Mr. Rowe and Mr. Brennan. What are we supposed to do? In cases in which there is a conflict in testimony in an evidentiary context, like at a search and seizure hearing or whatever, where you have a conflict and you have a district court that does not make a specific finding of credibility, it is normally the practice of factual finding. It is the normal, not exclusive, practice of this court to defer to what would be the implicit determination. What's the implicit determination about an issue that's not mentioned at all? Well, when you say it is not mentioned at all, the district court said specifically in this particular case that Rowe did not specifically identify what discovery Brennan did not review to him. And then she goes on to say, and then Rowe has not demonstrated how his review of all the evidence would have led to a different outcome in the trial. Now, she says that Brennan admitted to not having reviewed electronic evidence that did not involve him, including discovery pertaining to his co-defendants. And so the court then goes on to say that Rowe has an established prejudice in this case. So the district court did make a finding of no prejudice with respect to that. So what about this dispute about these phones? I mean, I don't know what he means by electronic evidence, but if that means phones found in his car, or they were burner phones, that would be important to review with your client because he already had arguments that a piece of paper found in his car was more likely associated with his co-defendants, the mother of his child, than him. And he could have explained the same thing about the burner phones, equipped the defense attorney to be much more effective on cross-examination at a bare minimum. On direct appeal from this case in evaluating the extensive evidence against Rowe, this court referred in part to the incriminating evidence from the text messages. And they reviewed that as incriminating. And we view that, again, as part of the reason why Rowe can't show any prejudice. Why would we have bothered remanding if our analysis of the evidence had already foreclosed any finding of prejudice? I'm not saying that. I'm saying that in reviewing the evidence that the district court did, the district court in part relied on the evidence that was described by this court on the direct appeal in this case. And what we're saying is the same way she described it, and she was the trial judge, as extensive and strong. And when you take all that evidence and view it together and not as isolated bits and pieces, the evidence against Rowe was absolutely, in our view, overwhelming. And so that, yes, there may have been something that might have been done a little bit different. Brennan may have interviewed a witness here. He may have done a little bit review of discovery with respect to the surveillance tapes that involve somebody else. It would not have made a difference in this case. But the way you've just described it is that one of the key pieces of evidence was the text with Brantley. And that's what he says that his lawyer didn't review with him. And maybe he would have been able to come up with a defense to that key piece of evidence against him in the case. But his claim is that his lawyer never reviewed that evidence with him. Well, Brennan said he did review all of the evidence. And I'll agree that there's no explicit finding from Judge Chutkin about what evidence the lawyer reviewed with the defendant. So if it were the case, right, that texts from these phones found in his car were the key thing to incriminating him. And his lawyer never showed him that before the trial. And in his words, both he and the lawyer were both shocked. That would be a pretty good claim of arguably even just deprivation of the assistance of counsel. You're withholding the key evidence, so we can't prepare for trial. Rose said that he was surprised, but Brennan said he was not surprised. If you have that conflict, our position is you get a conflict between the defendant and the government's witness at a suppression hearing, and the district court denies the hearing, then our theory is, and our position is, that you have to accept the testimony of the witness who entered into this particular case. I reviewed all of the relevant evidence with him. I did not review the discovery relating to the tapes of the co-conspirators. So we would submit that there's the implicit finding that the district court found. And even if the district court didn't make the— I have a question about that. So to be clear, where my concern would lead at most would be a remand on the theory that we don't know what Judge Chutkin found about the extent of the review of discovery. But you've relied on the Johnson case, and there's a question about that case. For this proposition that we can sort of make our own fact-finding. Am I right in that case involved, there was just no written findings at all in ruling on a suppression motion? It seems at least a bit different where we have a pretty extensive opinion from the district court, and the government is still asking us to sort of impute an unstated factual finding to the district court. Do you have a case that looks more like that? I believe I cited the Evans case in my brief for the proposition that in normal context where there are no specific findings of fact made by the district court below, then on appeal you normally assume that the facts are in the light most favorable to the prevailing party. So if you have a dispute here, then it would be—Brennan says, I did review all of the important discovery. I just did not review the testimony relating to the co-conspirators on the surveillance tapes, then we would submit that the district court having ruled against Roe in this context should accept Brennan's testimony on that particular point. And in any event, I mean, you mentioned about sending this back for a remand. Inasmuch, again, the district court said that Roe's review of that evidence would not have changed the outcome of this trial. So even assuming there may have been an error in this particular setting, we do not concede that there was one. There is no prejudice in this particular case. I know I've said this a couple of times, but Judge Chutkan said the evidence in this case was strong and extensive, and she had that advantageous position over the case that the Supreme Court mentioned in Massaro. So can I ask you a question, a clarifying question? Are you familiar with the actual evidence that came in at trial and what evidence came from all of the different phones? No, I just have a general idea of the evidence that came in. I did cite the government's opening brief in this court, and that brief does contain a fairly extensive recitation of all of the evidence that's pertained to Roe. And I'd ask you again, Judge Garcia, that this is not a question of looking at all the evidence, including the surveillance tapes and looking at unexplained wealth and all of that in isolation, but to look at them together. And when you look at all of that evidence together, there's not a real chance that he could show any likelihood that he was prejudiced by any errors committed by the defense attorney. I guess, I mean, if you have a case, I mean, from this court or another court, it would be helpful where this we round up everything in favor of the government because the district court ruled for the government, even when there's no discussion of a disputed fact issue at an ineffective assistance of counsel hearing, not a suppression hearing. I didn't find a specific one, but I would imagine that the rule should be the same. Well, I would imagine not because the point of a whole ineffective assistance of counsel hearing is not to review the trial that happened, but to figure out what didn't happen by counsel and whether if it were incompetent. These are all big questions. If competent counsel had had the reins and investigated evidence and talked to witnesses and been able to formulate a defense strategy that way, would it have been a different record? Would the trial, that's the whole question, would it have, was there a chance that the trial would have had to come out differently? Right. That's the prejudice standard. And so I'm not sure how we can, in an effective assistant counsel saying, say, well, given the ineffective assistance of counsel, everything was overwhelming. When the district court could have found that, in fact, it would have been a different story. I'm not saying they would in this case or would not. I'm saying we have such a vacuum of information from what Mr. Brennan didn't do. And then what remand counsel completely dropped the ball on, that it's, I don't know how we can just go, well, let's just assume everything would have been the same. And the government's overwhelming evidence would have been just as overwhelming. It was all circumstantial evidence as to him. It was burner phones. It was his computer in a place where people used others' computers. I'm not saying, you can win on circumstantial evidence. There's no doubt that you can. And I'm not saying it wouldn't be enough. But you don't have videos of him. And I think, if I recall, and you can correct me, a lot of the text messages were from burner phones, not his personal cell phone. So it's one of those where it's hard to put into my head at least what this would have looked like if we'd at least had a full record on the competence of counsel in the first place. Well, I think the record is adequate. And, again, one salient piece of evidence that goes against him is that unexplained wealth. That was, again, another investigation problem, though. Yes, but let's assume, with respect to Cranco, that he didn't interview here. She might or may not have said that she had won $20,000 in the football pool. That wouldn't have even come close to refuting the government's evidence that Roe had. He also needed to investigate more about the business, go out to the track and see what he was – I mean, this guy's winning $20,000 in football pools. Maybe he's a big stakes gambler at the racetrack, too. I'm not saying what – I'm saying we don't know what we don't know. And after a remand, we still don't know what we don't know in this case. It could be very well exactly what your view of the evidence is, but we don't know what we don't know about what the defense could have discovered and either put on as witnesses or been able to much more ferociously attack the government's case and change the complexion of it. But again, it was not – it was a strategic decision on his part that even if he had put on the $20,000 evidence, then the government would have come back and said, yeah, but we have a lot more unexplained wealth. And Brennan made a strategic – Brennan made a strategic determination. As he said earlier, nothing messes up a defense as putting one on. And if he put on the $20,000 – Very odd statement to make, but go ahead. No, he was talking about you have to close all the loops when you're presenting an affirmative defense. And his point was simply that $20,000 wouldn't have done it, okay? He had way too much unexplained wealth. $20,000 would have gone against him. And that would be a great strategic judgment if we knew that was the whole story about his alternative sources of income. I mean, you just said an uninformed strategic judgment is not competent. I don't buy that premise that it was an uninformed – No, I'm just – I'm not saying it is yet either, right? This is what we don't know from the recent proceeding. But if – well, it was uninformed in that he didn't collect the information. I am saying that. But it could have been he talked to everybody and it all would have come up way short. And then it would be a very informed and probably wise strategic judgment not to try to tip the whole thing based on one football pool. I get that. Again, our position is that he did a reasonable investigation because he did ask Earl about his so-called winnings at the track. He talked to Harris about the promotion business. He talked to the family about the football pool. In our view, that was a reasonable investigation even if he didn't interview Cranco and even if Cranco would have testified that there would have been $20,000 from a football pool. That would not have eliminated the vast degree of unexplained wealth that the government had produced. If you'll indulge me, this is less of a question than a comment on how the government briefs and argues these cases, and it goes to prejudice. So it's not particularly helpful when we get a vague statement of reference to a brief in the prior appeal and to the district court's sort of general statement that the evidence was overwhelming. It's more helpful if we're actually pointed to what the relevant and most important evidence was. And to make that much more concrete in this case, we've been talking about investigation into who was on the computer and two phones that were seized from his car. We did go back to the trial transcript, and it looks like for almost two full days, the prosecution walked through real-time phone calls and texts from a phone not taken from his car but that was seized from his person when he was arrested and that he stipulated was his phone. And if that's the case, then you would have had a very straightforward no prejudice argument that would have been much more helpful to the court because that was on the observed marked packages being delivered and him communicating in real time. And it seems quite clear to me, if I understand that correctly, that there's no possibility that there was any prejudice here. But it is much more helpful if we're concrete in the briefing. It gives the defense a chance to respond and make sure we don't make mistakes. I acknowledge that, Judge Gershwin. Thank you. No further questions. All right. Thank you very much. Okay, Mr. Coburn, we'll give you two minutes. Very kind of you, Your Honor. Actually, as Your Honor noted, I reserved two minutes, but as I was listening to both parts of this argument, I'm not sure I have anything affirmatively to add, but, of course, happy to answer any questions the panel might have. Questions? All right. Thank you very much, Mr. Coburn. You were appointed by the court to represent the appellant, Mr. Rowe, in this case, and we thank you for your assistance. Thank you, Your Honor. Case is submitted.
judges: Millett; Wilkins; Garcia